# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

1   U.S. Government Plaintiff

2   U.S. Government Defendant

3   Federal Question
*(U.S. Government Not a Party)*

4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| | 340 Marine | | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 151 Medicare Act | 345 Marine Product Liability | **PERSONAL PROPERTY** | 740 Railway Labor Act | | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 350 Motor Vehicle | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 470 Racketeer Influenced & Corrupt Organizations |
| | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 360 Other Personal Injury | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 160 Stockholders' Suits | 362 Personal Injury -Medical Malpractice | 385 Property Damage Product Liability | **IMMIGRATION** | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 190 Other Contract | | | 462 Naturalization Application | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | | 864 SSID Title XVI | 891 Agricultural Acts |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

1   Original Proceeding

2   Removed from State Court

3   Remanded from Appellate Court

4   Reinstated or Reopened

5   Transferred from Another District *(specify)*

6   Multidistrict Litigation–Transfer

8   Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**     Yes     No

## VIII. RELATED CASE(S), IF ANY *(See instructions):*

JUDGE                            DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

**(Place an "X" in One Box Only)**     **SAN FRANCISCO/OAKLAND**          **SAN JOSE**          **EUREKA-MCKINLEYVILLE**

**DATE**                    **SIGNATURE OF ATTORNEY OF RECORD**

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

(1) United States plaintiff. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

(2) United States defendant. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

(3) Federal question. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

(4) Diversity of citizenship. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.

(1) Original Proceedings. Cases originating in the United States district courts.

(2) Removed from State Court. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

(3) Remanded from Appellate Court. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

(4) Reinstated or Reopened. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

(5) Transferred from Another District. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

(6) Multidistrict Litigation Transfer. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

(8) Multidistrict Litigation Direct File. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

Please note that there is no Origin Code 7. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.** **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Blaine Bookey (CA Bar No. 267596)
CENTER FOR GENDER & REFUGEE STUDIES
200 McAllister Street
San Francisco, CA  94102
Tel: (415) 703-8202
bookeybl@uclawsf.edu

Jeremy Jong* (NJ Bar No. 066472014)
AL OTRO LADO, INC.
3511 Banks St.
New Orleans, LA  70119
Tel: (504) 475-6728
jeremy@alotrolado.org

Edith Sangueza* (NY Bar No. 5694534)
CENTER FOR GENDER & REFUGEE STUDIES
26 Broadway, 3rd Floor
New York, NY 10004
Tel: (415) 581-8839
sanguezaedith@uclawsf.edu

*Attorneys for Plaintiffs*

**Pro hac vice* application forthcoming

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR GENDER AND REFUGEE STUDIES and AL OTRO LADO, INC., | Case No. |
| Plaintiffs, | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| v. | |
| U.S. CUSTOMS AND BORDER PROTECTION, | |
| Defendant. | |

### **INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, *et seq.*, seeking to compel U.S. Customs and Border Protection ("CBP"), a component of

the U.S. Department of Homeland Security ("DHS"), to immediately release records requested

under FOIA relating to open-air "gathering sites" within CBP's San Diego Sector.

2.      Since at least May 2023, CBP has forced thousands of migrants to await

processing for asylum or other relief in dangerous and squalid outdoor spaces without reliable

access to food, water, shelter, warmth, sanitation, or medical care. CBP has used the term

"gathering sites" to refer to these open-air detention sites.[1] These sites are known to humanitarian

aid groups as 91X, Spooner's Mesa, Whiskey Eight, and Whiskey Four, near the San Ysidro port

of entry; and Moon Valley, Tower 177, and Willows, near Jacumba, California.[2]



National Public Radio Photograph of a site in Jacumba, California[3]

---

[1] Jacob Aere, *Hundreds of migrants still detained in poor conditions near Jacumba Hot Springs*, KPBS (last visited Mar. 7, 2024, 6:00 PM), at 3, https://www.kpbs.org/news/border-immigration/2023/10/06/hundreds-of-migrants-still-detained-in-poor-conditions-near-jacumba-hot-springs; John Mone, *Asian migrants seeking asylum at US border face different obstacles*, SCRIPPS NEWS (last visited Mar. 7, 2024, 6:00 PM), https://scrippsnews.com/stories/asian-migrants-seeking-asylum-at-us-border-face-different-obstacles/.

[2] *See* Pedro Rios, *Update: AFSC U.S.-Mexico Border Program staff responds to Border Patrol's open-air detention sites, American Friends Service Committee* (last visited Mar. 12, 2023, 8:56 AM), https://afsc.org/newsroom/update-afsc-us-mexico-border-program-staff-responds-border-patrols-open-air-detention; Al Otro Lado et al., Dep't of Homeland Security Civil Rights-Civil Liberties Complaint, *CBP Violations of Custody Standards and Human Rights of Individuals Detained in Open-Air Detention Sites in the San Diego Sector Require Immediate Attention to Save Lives,* Dec. 11, 2023, at 5, 12, https://assets.nationbuilder.com/alliancesandiego/pages/3500/attachments/original/1702482964/OADS_C RCL_Complaint_Final_Combined_for_Submission_2023.12.11.pdf?emci=d79ad634-d999-ee11-bea1-002248223f36&emdi=9341f59d-f599-ee11-bea1-002248223f36&ceid=11038283.

[3] Jasmine Garsd, *Border Patrol sending migrants to unofficial camps in California's desert, locals say*, NPR (last visited Mar. 7, 2024, 6:00 PM), https://www.npr.org/2023/11/21/1213597119/border-patrol-migrants-unofficial-camps-jacumba-california-desert.

1

3.    Upon information and belief, CBP has recently set up at least two additional "gathering sites" in the Otay Mountain Wilderness in San Diego County.



**Figure 1 Photo courtesy of Al Otro Lado, March 2024**

4.    Currently, hundreds of people from different countries are stranded in the California desert in the hope of seeking protection in the United States.

5.    Claiming that migrants detained at these sites are not in their custody, CBP disclaims any responsibility to provide them with necessities beyond minimal amounts of water and small snacks. However, CBP regularly patrols and monitors these sites and exercises significant control over the movements and treatment of those waiting at the sites.[4] In a May 2023 interview, a CBP agent stated that migrants who left the site would be apprehended; other sources report that the agency is compelling migrants to wait at these sites. Migrants themselves report that they are in detention.[5]

---

[4] *People Seeking Asylum Confined Outside in Appalling Conditions: Findings and Recommendations from a Monitoring Visit to San Diego*, WOMEN'S REFUGEE COMMISSION, Nov. 21, 2023, https://www.womensrefugeecommission.org/wp-content/uploads/2023/11/People-Seeking-Asylum-Confined-Outside-in-Appalling-Conditions-Final.pdf; Kate Morrissey*, In letter to congressmembers, CBP denies holding migrants in custody between border fences in San Diego*, SAN DIEGO UNION-TRIBUNE (last visited Mar. 7, 2024, 6:00 PM), https://www.sandiegouniontribune.com/news/immigration/story/2023-07-12/letter-congressmembers-cbp-migrants-between-border-fences-san-diego#:~:text=The%20letter%20noted%20that%20those,restrooms%20and%20basic%20hygiene%20products.

[5] Tom K. Wong, *Lives in Danger: Seeking Asylum Against the Backdrop of Increased Border Enforcement*, U.S. IMMIGRATION POLICY CENTER, May 16, 2023, https://usipc.ucsd.edu/publications/usipc-lives-in-danger.pdf?emci=4479c51d-9df3-ed11-907c-; Melissa Gomez, *Migrants struggle against the elements in San Diego's open-air desert camps*, LOS ANGELES

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

6.      The migrants waiting in the "gathering sites," journalists, and Members of Congress have sought information regarding CBP's operations and activities at these sites.[6] CBP has repeatedly declined to respond to such requests, or has provided only inadequate, boilerplate responses.[7]

7.      As a result, Plaintiff Al Otro Lado ("AOL") submitted a Freedom of Information Act ("FOIA") request to CBP on October 5, 2023. Plaintiffs AOL and Center for Gender & Refugee Studies ("CGRS") submitted another request to CBP on December 14, 2023. The requests, attached hereto as Exhibits 1 and 2, sought records concerning CBP's activities at the gathering sites in CBP's San Diego Sector.

8.      Plaintiffs sought expedited processing of their December 14 request given the significant media interest in and concerns over the integrity and propriety of CBP's treatment of migrants at the sites.

9.      CBP has not issued any determinations to Plaintiffs responsive to either of their FOIA requests or to their expedited processing request.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B), (a)(6)(C)(i), (a)(6)(E)(iii).

11.     This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(E)(iii), and 28 U.S.C. § 2201–2202.

12.     Plaintiffs have exhausted any and all administrative remedies in connection with this FOIA request.

13.     Venue is proper within this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e)(1).

---

TIMES (last visited Mar. 7, 2024, 6:00 PM), https://www.latimes.com/california/story/2023-11-28/migrants-struggle-against-elements-san-diego-desert-camp.
[6] Mireya Villarreal, et. al, *Migrant encampments surging at border in Jacumba Hot Springs: Reporter's Notebook*, ABC NEWS (last visited Mar. 7, 2024, 6:00 PM), https://abcnews.go.com/US/migrant-encampments-surging-border-jacumba-hot-springs-reporters/story?id=105424839; Morrissey, *supra* note 4; Garsd, *supra* note 3.
[7] *See* Garsd, *supra* note 3; Morrissey, *supra* note 4.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**INTRADISTRICT ASSIGNMENT**

14.     Assignment of this action to the San Francisco Division of this Court is warranted pursuant to Civil L.R. 3-2 because Plaintiff CGRS is headquartered in San Francisco, California.

**PARTIES**

15.     Plaintiff CGRS is a nonpartisan organization based at the University of California College of the Law, San Francisco, with its principal place of business at 200 McAllister Street, San Francisco, CA  94102. Through litigation, scholarship, policy recommendations, and in-depth training and technical assistance, CGRS defends the human rights of refugees seeking asylum in the United States. Founded to advocate for women fleeing gender-based violence, CGRS has grown into an internationally respected resource for asylum more generally, renowned for its knowledge of the law and ability to combine sophisticated legal strategies with policy advocacy and human rights interventions to address the underlying causes of forced migration. CGRS participates as co-counsel or amicus curiae in impact litigation, produces an extensive library of litigation support materials, maintains an unsurpassed database of asylum records and decisions, and works in coalitions with immigrant, refugee, LGBTQ+, children's, and women's rights networks. In addition, CGRS publishes practice advisories, reports, policy analysis, and other educational materials that are widely disseminated, including through its website. Many of these resources are publicly available, and litigation support materials are accessible to registered users—including non-profit groups, lawyers, academics, law students, refugees, and asylum seekers—free of charge. CGRS also publishes an electronic newsletter distributed to subscribers via email, regularly conducts nationwide trainings and webinars, and releases information via social media platforms. CGRS will make widely available to the public information obtained through this FOIA request via its website and/or by other means discussed above.

16.     Plaintiff AOL is a non-profit, non-partisan, binational advocacy and legal services organization incorporated in California. AOL's mission is to uplift immigrant communities by defending the rights of migrants against systemic injustices and fighting for all families that have been torn apart by unjust immigration laws.  AOL prioritizes providing holistic

legal and humanitarian support to refugees and other migrants through a multidisciplinary, client-centered, harm reduction-based practice. AOL provides free legal services on both sides of the U.S.-Mexico border and beyond. AOL's Border Rights Project provides legal education, representation, accompaniment, and human rights monitoring for thousands of asylum seekers in Tijuana every year. AOL also documents human rights violations committed by U.S. and Mexican government officials against refugees at the U.S.-Mexico border, which provide a basis for advocacy with U.S. policy makers and international human rights bodies. AOL regularly provides information and analysis to the media and the public, as well as to international human rights advocacy organizations and human rights monitoring bodies. AOL actively shares and publicly disseminates information about its work, as well as conditions on the U.S.-Mexico border and in immigration detention, through its various social media accounts and website. Disseminating information to the public is a critical component of AOL's work, which AOL does free of charge.

17.     Defendant CBP is an agency within the meaning of 5 U.S.C. § 552(1)(f). CBP has been delegated authority to administer certain provisions of the Immigration and Nationality Act, including those relating to apprehension and processing of noncitizens who enter the United States at or between ports of entry. CBP has possession, custody, and control of records responsive to Plaintiffs' FOIA requests.

## FACTS

### A.    BACKGROUND

18.     Prior to about May 2023, CBP took noncitizens apprehended at or near the U.S.-Mexico border in California directly to holding facilities, where they were detained and processed.

19.     CBP's National Standards on Transport, Escort, Detention, and Search ("TEDS Standards") require it to provide a clean, safe environment; regular meals; unrestricted access to clean drinking water; restroom access (including toilet paper and menstrual products); basic personal hygiene items; and emergency medical care, among other necessities, to those in its custody. The TEDS Standards also require CBP to provide clean blankets to people in its custody

upon request, when available, and to make reasonable efforts to provide showers, clean towels, and soap to those approaching 72 hours in custody. In addition, the TEDS Standards mandate that CBP adopt additional safeguards in caring for children, pregnant people, and other at-risk populations.[8]

20.     Since at least May 2023, CBP has no longer taken most migrants apprehended in certain areas of California directly to holding facilities.  Instead, CBP requires migrants to wait, sometimes for days at a time, in open-air "gathering sites" in San Diego County prior to processing. In many cases, CBP transports apprehended migrants to one of these sites.  On some days, hundreds of people—including children, pregnant people, and other vulnerable people—have been forced to await processing at these sites.[9]

21.     Upon information and belief, CBP has issued some guidance to its officers with respect to operations at the so-called "gathering sites."

22.     Multiple CBP statements and media reports indicate that CBP directs, transports, and assumes at least some responsibility for migrants at these sites. For example, CBP has reportedly distributed wristbands to migrants indicating their date of arrival at the sites.[10] CBP also reportedly operates a triage system through which it prioritizes certain migrants for processing.[11]

23.     A May 2023 study from the U.S. Immigration Policy Center at University of California, San Diego found that ninety-three percent of migrants interviewed at the Jacumba sites believed that Border Patrol would arrest and detain them if they tried to leave the encampment, and all of them felt they were in detention.[12]

---

[8] *See* U.S. CUSTOMS & BORDER PROTECTION, NATIONAL STANDARDS ON TRANSPORT, ESCORT, DETENTION, AND SEARCH, (2015), https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/cbp-teds-policy-october2015.pdf.
[9] *See* Gomez, *supra* note 5 (*"*Volunteers say an average of 500 migrants are now living in three camps in the area on any given day"); Maura Fox, *Second complaint filed over conditions for migrants at open-air detention sites in San Diego desert*, SAN DIEGO UNION-TRIBUNE (last visited Mar. 12, 2024, 9:12 AM), https://www.sandiegouniontribune.com/news/immigration/story/2023-12-15/complaint-conditions-migrants-open-air-detention-sites.
[10] *See* Villarreal, *supra* note 6; Gomez, *supra* note 5.
[11] Villarreal, *supra* note 6;.*see also* Rios, *supra* note 2.
[12] Wong, *supra* note 5.

24.     While CBP claims that smugglers or cartels are responsible for bringing migrants to these sites, aid workers have reported seeing CBP officers dropping off migrants at the sites multiple times per week.[13] One CBP officer interviewed in connection with the U.S. Immigration Policy Center study described the migrants in Jacumba as not free to leave, but also not detained.[14]

25.     CBP denies that the waiting migrants are in its custody and therefore disclaims any obligation to provide them with necessities beyond minimal water and snacks.[15]

26.     At four of the seven identified sites, Plaintiff AOL and other local humanitarian aid groups such as Universidad Popular, Friends of Friendship Park, American Friends Service Committee, and other groups, struggle to provide the food, tents, clothing and medical aid necessary for the migrants to survive.[16]

27.     Following discussions with the aid groups, CBP agreed to provide some portable toilets, to distribute food cooked by volunteers, and to allow volunteers access to some of the sites.[17] CBP also allows ambulances to pick up seriously injured or ill migrants, but generally instructs the ambulances to wait down the road from the sites.[18]

28.     CBP's public statements indicate that the agency has protocols and policies in place regarding conditions at the sites, but they are inadequate to protect migrants' health and safety. San Diego Sector Border Patrol Chief, Patricia McGurk-Daniel, has publicly discussed CBP's operations at the sites, where they use off-road vehicles, order supplies, and plan responses to cold and wet weather.[19] CBP also claims that it provides "appropriate medical care

---

[13] Ciara Encinas, *San Diego Border Patrol Chief addresses migrants camping out near San Ysidro*, 10 NEWS SAN DIEGO (last visited Mar. 7, 2024, 6:00 PM), https://www.10news.com/news/local-news/san-diego-border-patrol-chief-addresses-migrants-camping-out-near-san-ysidro; Women's Refugee Committee at 3, *supra* note 4.

[14] *See* Wong, *supra* note 5.

[15] *See* Villarreal, *supra* note 6; Rios, *supra,* note 2*.*

[16] *See* Gomez, *supra* note 5; Rios, *supra* note 2.

[17] *See* Rios, *supra* note 2.

[18] *CBP Violations of Custody Standards*, *supra* note 2, at 17–18.

[19] Encinas, *supra* note 13; Ciara Encinas, *Wet and cold weather presents new danger for migrants crossing into San Diego County*, 10 NEWS SAN DIEGO (last visited Mar. 7, 2024, 6:00 PM), https://www.10news.com/news/local-news/wet-and-cold-weather-presents-new-danger-for-migrants-crossing-into-san-diego-county.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

and humanitarian assistance as needed" and coordinates "with emergency medical services to assist individuals in need" at the sites.[20]

29.     The aid groups are quickly running out of money for supplies for migrants forced to wait at the sites.[21] Over the winter, temperatures have dropped below 40 degrees, and some migrants report that they do not even have tents for shelter.[22]

30.     As a result of these dire circumstances, thousands of migrants at or near the U.S.-Mexico border, and the organizations that serve them, urgently need information about CBP's operation of the open-air "gathering sites." Such information will be critical to enabling aid groups, including AOL, to plan for and respond to the needs of migrants at the border.

31.     Disclosure of the requested information will fulfill the transparency and accountability goals of the FOIA and will aid the public, advocates, and migrants in comprehending how the U.S. government is treating those who seek refuge in this country.

**B.    PLAINTIFFS' REQUESTS**

32.     On October 5, 2023, Plaintiff AOL submitted a FOIA request to CBP, notifying the agency that it must post any final opinions, policies, interpretations, and administrative staff manuals and instructions regarding the Jacumba sites on its online reading room pursuant to 5 U.S.C § 552(a)(2)(A)-(C) ("First FOIA Request").[23]

33.     CBP confirmed receipt of the First FOIA Request and assigned it tracking number CBP FOIA-CBP-FO-2024-002267.

34.     To date, CBP has not posted any of the requested records to its online FOIA reading room.

35.     On December 14, 2023, Plaintiffs AOL and CGRS submitted a new FOIA request to CBP ("Second FOIA Request") seeking the following records pursuant to 5 U.S.C § 552(a)(3):

---

[20] *See* Garsd, *supra* note 3 (quoting from an email statement submitted to NPR by the agency).
[21] Paulina Velasco, *Detained in the desert: migrants stuck in camps in the extreme climate of the US-Mexico border,* THE GUARDIAN (last visited Mar. 7, 2024, 6:00 PM), https://www.theguardian.com/us-news/2023/nov/27/us-mexico-border-asylum-open-air-detention-center-california (One aid worker stated that "[p]rograms that were already providing life-sustaining support along the border are now involved in providing life-sustaining support in OADs. We're so incredibly strained, and someone's going to die.").
[22] *See* Gomez, *supra* note 5.
[23] *See* Exhibit 1.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1. All communications sent or received by CBP San Diego Sector employees concerning activities at "gathering sites" within the San Diego Sector's area of responsibility. CBP may limit its search to communications sent or received between May 11, 2023 and the date that it conducts its search.

2. All "daily updates" or "daily reports" for any "gathering site" in the San Diego Sector's area of responsibility.

3. All communications sent or received by CBP's Office of Congressional Affairs between May 1, 2023 and the date of the instant search concerning any "gathering site" in San Diego Sector's area of responsibility. The response should include any correspondence with the staff of U.S. Representatives Juan Vargas, Robert Garcia or Delia Ramirez concerning the "gathering sites."

4. All communications sent or received by CBP San Diego Sector employees concerning a December 13, 2023 visit by DHS Office of Civil Rights and Civil Liberties investigators to CBP "gathering sites" within the San Diego Sector's area of responsibility

5. All CBP policies, memoranda, procedures, musters, standards, operations orders, reports, training material, or other documents concerning any "gathering site" in the San Diego Sector's area of responsibility.[24]

36.     Plaintiffs AOL and CGRS sought expedited processing of the Second FOIA Request on the ground that it concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv). In support of this assertion, Plaintiffs cited seventeen news articles and reports about CBP's "gathering sites." Plaintiffs also referenced media reports regarding concerns raised by community groups, state and local officials, and U.S. Representatives Juan Vargas, Robert Garcia, and Delia Ramirez concerning the lack of humanitarian aid and transparency at the sites.

37.     Finally, Plaintiffs explained that the media has shown considerable interest in both a proposed supplemental funding bill that would increase CBP funding and former President Trump's plans to use "giant camps" as part of his immigration policy if re-elected. Plaintiffs emphasized that the controversy over the sites arose in the context of broader debates regarding whether increased CBP funding is warranted given Border Patrol's track record of abuses and the potential future course of U.S. border policy.[25]

---

[24] *See* Exhibit 2.
[25] *See id.*

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

38.     CBP confirmed receipt of the Second FOIA Request and assigned it tracking number CBP-FO-2024-032860.

39.     To date, 60 business days have passed since CBP received the Second FOIA Request, and CBP has yet to issue a determination with respect to that request.

40.     CBP has not produced records responsive to the Second FOIA Request.

41.     Defendant failed to provide Plaintiffs with the required response to the Second FOIA Request within the times prescribed by the FOIA. *See* 5 U.S.C. § 552(a)(6)(A). Plaintiffs' request remains pending.

42.     Defendants' conduct violates the requirements of the FOIA and deprives Plaintiffs of the opportunity to timely inform the public, humanitarian aid groups that provide assistance at the sites, and directly impacted migrants about the federal government's current treatment of noncitizens apprehended at or near the southern border.

## CLAIMS FOR RELIEF

### COUNT I: Violation of 5 U.S.C. § 552(a)(2)
### Failure to Make Records Available for Public Inspection
(On Behalf of Plaintiff AOL)

43.     Plaintiff AOL re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

44.     FOIA requires mandatory publication of certain agency records, including all final agency opinions and orders, policies and interpretations not otherwise published in the Federal Register, and administrative staff manuals and instructions. 5 U.S.C. § 552(a)(2)(A)-(C).

45.     CBP has violated its obligation under the FOIA by failing to publish any agency opinions, orders, policies, interpretations, administrative staff manuals, or instructions regarding its operations at the "gathering sites" in its online FOIA reading room.

### COUNT II: Violation of 5 U.S.C. § 552(a)(6)(A)(i)
### Failure to Make and Communicate Timely Determination
(On Behalf of Plaintiffs AOL and CGRS)

46.     Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

47.     Under the FOIA, CBP was required to notify Plaintiffs of its determination whether to comply with the Second FOIA Request within twenty working days after receiving the request. 5 U.S.C. § 552(a)(6)(A)(i).

48.     CBP has violated its obligation under the FOIA by failing to make the required determination and to communicate that determination to Plaintiffs within the designated timeframe.

**COUNT III: Violation of 5 U.S.C. § 552(a)(3)(C)**
**Failure to Conduct Adequate Search**
(On Behalf of Plaintiffs AOL and CGRS)

49.     Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

50.     Under the FOIA, CBP is required to respond to a FOIA request by making reasonable efforts to search for the records requested. 5 U.S.C. § 552(a)(3)(C).

51.     CBP has violated its obligation under FOIA by failing to conduct an adequate search for records responsive to the Second FOIA Request.

**COUNT IV: Violation of 5 U.S.C. § 552(a)(4)(B)**
**Unlawful Withholding of Agency Records**
(On Behalf of Plaintiffs AOL and CGRS)

52.     Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

53.     Under the FOIA, CBP may withhold records only under the exemptions specifically enumerated in the FOIA. 5 U.S.C. § 552(a)(3)(C).

54.     CBP has violated its obligation under FOIA by unlawfully withholding records responsive to the Second FOIA Request other than those that FOIA has exempted.

**COUNT V: Violation of 5 U.S.C. § 552(a)(3)(A)**
**Failure to Make Records Promptly Available**
(On Behalf of Plaintiffs AOL and CGRS)

55.     Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

56.     CBP was obligated under 5 U.S.C. § 552(a)(3)(A) to promptly produce records responsive to the Second FOIA Request.

11

57.     Plaintiffs have a legal right to obtain such records, and no legal basis exists for CBP's failure to disclose them.

58.     CBP has violated its statutory obligation by failing to produce any records responsive to the Second FOIA request.

### COUNT VI: Violation of 5 U.S.C. § 552(a)(6)(E)
### Failure to Make Expedited Processing Determination
(On Behalf of Plaintiffs AOL and CGRS)

59.     Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

60.     CBP was required to make a determination regarding whether to provide expedited processing within ten days after the date of the Second FOIA Request. 5 U.S.C § 552(a)(6)(E)(ii)(I), (iii).

61.     CBP violated its obligation under FOIA by failing to issue a timely determination in response to Plaintiffs' request for expedited processing of the Second FOIA Request.

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Assume jurisdiction over the matter;

2.     Declare that CBP's failure to publish final agency opinions and orders, policies and interpretations not otherwise published in the Federal Register, and administrative staff manuals and instructions in response to the First FOIA Request violates FOIA. 5 U.S.C. § 552(a)(2)(A)-(C);

3.     Order CBP to publish, in response to the First FOIA Request, final agency opinions and orders, policies and interpretations not otherwise published in the Federal Register, and administrative staff manuals and instructions concerning its operations at its "gathering sites";

4.     Order CBP to conduct a prompt and adequate search for all records responsive to the Second FOIA Request in accordance with 5 U.S.C. § 552(a)(3)(C);

5.     Declare that CBP's failure to timely produce the required determination applicable to the Second FOIA Request violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

6.    Declare that CBP's failure to disclose records responsive to the Second FOIA Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and enjoin CBP from continuing to improperly withhold records;

7.    Declare that CBP's failure to make a determination responsive to Plaintiffs' request for expedited processing of the Second FOIA Request violates FOIA, 5 U.S.C. § 552(a)(6)(E)(ii)(I);

8.    Order CBP to produce, within twenty (20) days of the Court's order, or by such other date as the Court deems appropriate, all non-exempt records or portions of records responsive to the Second FOIA Request, all segregable records responsive to the Second FOIA Request, and CBP's justifications for withholding any responsive records;

9.    Award Plaintiffs reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E);

10.    Award Plaintiffs such further relief as the Court deems just, equitable, and appropriate.

Dated:  March 14, 2024

Respectfully submitted,

By: /s/ Blaine Bookey
Blaine Bookey (CA Bar No. 267596)
CENTER FOR GENDER & REFUGEE STUDIES
200 McAllister Street
San Francisco, CA  94102
Tel: (415) 703-8202
bookeybl@uclawsf.edu

Jeremy Jong* (NJ Bar No. 066472014)
AL OTRO LADO, INC.
Jeremy Jong
3511 Banks St.
New Orleans, LA 70119
Tel: (504) 475-6728
jeremy@alotrolado.org

Edith Sangueza* (NY Bar No. 5694534)
CENTER FOR GENDER &
REFUGEE STUDIES
26 Broadway, 3rd Floor

13

New York, NY 10004
Tel: (415) 581-8839
sanguezaedith@uclawsf.edu

*Attorneys for Plaintiffs*

*\*Pro hac vice* application forthcoming

# Exhibit 1

Andrew Fels, Esq.
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org.

October 5, 2023

***FOIA request for ICE and CBP reading room records pertaining to outdoor immigrant detentions or holds***

Dear Record Custodian,

Al Otro Lado is a binational nonprofit dedicated to providing legal services to immigrants. As part of its mission, AOL also seeks to encourage government transparency and accountability.

AOL seeks any and all non-exempt 5 U.S.C § 552(a)(2)(A)-(C) records explaining or describing ICE and CBP's practice of having immigrants remain outside without timely commencing or concluding immigration processing.

Under this recently adopted practice, CBP and ICE require recent immigrants to the United States to wait outside for immigration processing, sometimes for days at a times, without providing shelter or adequate food. For example, ICE and CBP are reported to be holding hundreds of immigrants at Jacumba Hot Springs, in California.[1] The immigrants are forced to live outside, relying on volunteer groups to provide food, shelter, and other necessities. After an indeterminate period of time, CBP and ICE take immigrants for immigration processing.

AOL seeks the policies underlying these practices.

5 U.S.C § 552(a)(2) requires CBP to make certain categories of public records available in its online reading room. These categories include:

> (A) any "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases." 5 U.S.C § 552(a)(2).

> (B) any "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;" *Id.*

---

[1] https://www.kpbs.org/news/border-immigration/2023/09/19/customs-and-border-protection-holding-hundreds-of-migrants-unsheltered-near-jacumba-hot-springs

(C) any "administrative staff manuals and instructions to staff that affect a member of the public." *Id.*

Accordingly, under DHS regulatory rules, CBP "is responsible for determining which of its records are required to be made publicly available, as well as identifying additional records of interest to the public that are appropriate for public disclosure, and for posting and indexing such records. . . . on an ongoing basis." 6 CFR § 5.2.

At this time, neither CBP[2] nor ICE's FOIA reading room contains records pertaining to the practices described above.[3]

As stated above, AOL seeks any and all non-exempt 5 U.S.C § 552(a)(2)(A)-(C) records explaining or describing ICE and CBP's practice of having immigrants remain outside without timely commencing or concluding immigration processing.

This FOIA request may be satisfied either by timely making the records directly available to AOL, publicly posting the records as required by 5 U.S.C § 552(a)(2), or directing AOL to the relevant reading room records.

A failure to answer this letter will be understood as an admission that neither ICE nor CBP have any policies authorizing or explaining the above-described practices.

As (a)(2) requires these records be made public, no fee may be charged for producing these records, nor are they subject to the limitations incumbent upon an (a)(3) FOIA request.

Because this inquiry seeks (a)(2) records, typical FOIA reply times do not apply: the records sought must already be disclosed in the CBP reading room.

Sincerely,

Andrew Fels, Esq.

Attorney,

Al Otro Lado

---

[2] https://www.cbp.gov/site-policy-notices/foia/reading-room
[3] https://www.ice.gov/foia/library

# Exhibit 2





**Center for Gender & Refugee Studies**

December 14, 2023

Via SecureRelease Portal
U.S. Customs and Border Protection
Freedom of Information Act Office

**Re: FOIA Request Regarding CBP "Gathering Sites"**

Al Otro Lado ("AOL") and the Center for Gender and Refugee Studies ("CGRS") submit this request for records to U.S. Customs and Border Protection ("CBP") pursuant to the Freedom of Information Act ("FOIA").

## I.     REQUEST

AOL and CGRS requests the following records:

1. All communications[1] sent or received by CBP[2] San Diego Sector employees concerning activities at "gathering sites"[3] within the San Diego Sector's area of responsibility. CBP may limit its search to communications sent or received between May 11, 2023 and the date that it conducts its search. It should search keywords, including but not limited to, "Jacumba", "gathering site", "gathering sites", "waiting site", "staging area", "open-air detention", "open air detention", "wrist bands", "wristbands", "bracelets", "AIS", "Whiskey", "Spooners Mesa", "91x", "O'Neill", "Moon Valley", "Willows", "T177" and "Tower 177." Suggested custodians include Mariza Marin, Patricia McGurk-Daniel, Kurtis Woods, Rjay Rippel, Joseph Filippi, Colin Lane and any other CBP San Diego Sector leadership.

2. All "daily updates" or "daily reports" for any "gathering site" in the San Diego Sector's area of responsibility.

---

[1] The term "communications" means any written message sent or received on any platform  including email, text message, Microsoft Outlook, WhatsApp, Signal, Wickr, or Skype. CBP should search both government issued and personal (do we mean "personal"?)  devices of relevant custodians.
[2] The term "CBP" means CBP and its components including U.S. Border Patrol, Office of Field Operations, and Office of Congressional Affairs.
[3] The term "gathering sites" refers to the areas in which migrants are directed to wait for CBP processing as CBP uses the term in media reports. *See* Jacob Aere, *Hundreds of migrants still detained in poor conditions near Jacumba Hot Springs*, KBPS Dec. 6, 2023, https://www.kpbs.org/news/border-immigration/2023/10/06/hundreds-of-migrants-still-detained-in-poor-conditions-near-jacumba-hot-springs; John Mone, *Asian migrants seeking asylum at US border face different obstacles*, Scripps News, Nov. 29, 2023, https://scrippsnews.com/stories/asian-migrants-seeking-asylum-at-us-border-face-different-obstacles/.

3. All communications sent or received by CBP's Office of Congressional Affairs between May 1, 2023 and the date of the instant search concerning any "gathering site" in San Diego Sector's area of responsibility. The response should include any correspondence with the staff of U.S. Representatives Juan Vargas, Robert Garcia or Delia Ramirez concerning the "gathering sites."

4. All communications[4] sent or received by CBP[5] San Diego Sector employees concerning a December 13, 2023 visit by DHS Office of Civil Rights and Civil Liberties investigators to CBP "gathering sites"[6] within the San Diego Sector's area of responsibility. CBP may limit its search to communications sent or received between December 1, 2023 and December 22, 2023. It should search keywords, including but not limited to "rapid response team", "CRCL",  "inspection", "visit", "Erika Pinheiro",[7] and  "Eric Funn" Suggested custodians include Mariza Marin, Patricia McGurk-Daniel, and any other CBP employees working at the San Diego Border Patrol Campo and Boulevard stations on December 13, 2023.

5. All CBP policies, memoranda, procedures, musters, standards, operations orders, reports, training material, or other documents concerning any "gathering site" in the San Diego Sector's area of responsibility.

## II.    REQUEST FOR EXPEDITED PROCESSING

This request qualifies for CBP's expedited processing track as it seeks records concerning "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv). The public, the media, and Congress have shown a "widespread and exceptional" interest in CBP's treatment of asylum seekers in San Diego County and the debate over whether CBP should receive funding increases at public expense.

For the past six months, community groups have raised concerns about the integrity of CBP's treatment of asylum seekers at so-called "gathering sites" in San Diego County, and media outlets have repeatedly reported on those concerns.[8] At least two asylum seekers have

---

[4] The term "communications" means any written message sent or received on any platform  including email, text message, Microsoft Outlook, WhatsApp, Signal, Wickr, or Skype. CBP should search both government issued and personal (do we mean "personal"?)  devices of relevant custodians.

[5] The term "CBP" means CBP and its components including U.S. Border Patrol, Office of Field Operations, and Office of Congressional Affairs.

[6] The term "gathering sites" refers to the areas in which migrants are directed to wait for CBP processing as CBP uses the term in media reports. *See* Jacob Aere, *Hundreds of migrants still detained in poor conditions near Jacumba Hot Springs*, KBPS Dec. 6, 2023, https://www.kpbs.org/news/border-immigration/2023/10/06/hundreds-of-migrants-still-detained-in-poor-conditions-near-jacumba-hot-springs; John Mone, *Asian migrants seeking asylum at US border face different obstacles*, Scripps News, Nov. 29, 2023, https://scrippsnews.com/stories/asian-migrants-seeking-asylum-at-us-border-face-different-obstacles/.

[7] Erika Pinheiro is the executive director of Al Otro Lado and was present for the December 13 CRCL visit.

[8] *See e.g.* Jasmine Garsd, *Border Patrol sending migrants to unofficial camps in California's desert, locals say*, NPR, Nov. 21, 2023, https://www.npr.org/2023/11/21/1213597119/border-patrol-migrants-unofficial-camps-jacumba-california-desert;

died at these sites.[9] Asylum seekers and community groups describe a humanitarian disaster in which those at the sites are left without food, water, and shelter in frigid winter conditions and CBP agents tell asylum seekers that they will be deported if they attempt to leave.[10] CBP, for its part, disclaims responsibility and claims that the asylum seekers are only at the sites because criminal organizations are putting them there.[11] Confusingly, one CBP officer described the asylum seekers at the Jacumba site as both not detained and not free to leave.[12] In response to widespread reporting, U.S. Representatives Juan Vargas, Robert Garcia, and Delia Ramirez have expressed their concern about the sites and continue to seek information from CBP about its operations there.[13] State and local elected officials have also criticized the federal government for its treatment of asylum seekers in San Diego County and the lack of humanitarian aid at the Jacumba site.[14]

The media has also shown exceptional interest in the public debate over CBP funding levels. Immigrant rights advocates argue that increased CBP funding is unwarranted given the "long-standing history of impunity for abuses carried out by U.S. Border Patrol."[15] Congress is

Melissa Gomez, *Migrants struggle against the elements in San Diego's open-air desert camps*, Los Angeles Times, Nov. 28, 2023, https://www.latimes.com/california/story/2023-11-28/migrants-struggle-against-elements-san-diego-desert-camp; Ciara Encinas, *San Diego Border Patrol Chief addresses migrants camping out near San Ysidro*, 10 News San Diego, Nov. 8, 2023, https://www.10news.com/news/local-news/san-diego-border-patrol-chief-addresses-migrants-camping-out-near-san-ysidro; Pedro Rios, *UPDATE: AFSC U.S.-Mexico Border Program staff responds to Border Patrol's open-air detention sites*, American Friends Service Committee, Oct. 2, 2023, https://afsc.org/newsroom/update-afsc-us-mexico-border-program-staff-responds-border-patrols-open-air-detention

[9] Dan Gooding, *Young Teen Migrant Dies Shortly After Crossing Southern US Border From Mexico*, The Messenger, Dec. 4, 2023, https://themessenger.com/news/young-teen-migrant-dies-shortly-after-crossing-southern-us-border-from-mexico; Gustavo Solis, After migrant woman died in San Ysidro, aid workers say nothing has changed, KBPS, Oct. 23, 2023, https://www.kpbs.org/news/border-immigration/2023/10/23/migrant-woman-died-san-ysidro-aid-workers-nothing-changed.

[10] *See supra* note 5.

[11] *Id.*; Women's Refugee Commission, *People Seeking Asylum Confined Outside in Appalling Conditions: Findings and Recommendations from a Monitoring Visit to San Diego*, Nov. 21, 2023, https://www.womensrefugeecommission.org/research-resources/people-seeking-asylum-confined-outside-in-appalling-conditions-findings-and-recommendations-from-a-monitoring-visit-to-san-diego/; Kate Morrissey, *In letter to congressmembers, CBP denies holding migrants in custody between border fences in San Diego, San Diego Tribune,* Jul. 12, 2023, https://www.sandiegouniontribune.com/news/immigration/story/2023-07-12/letter-congressmembers-cbp-migrants-between-border-fences-san-diego.

[12] *See* Tom K. Wong, *Lives in Danger: Seeking Asylum Against the Backdrop of Increased Border Enforcement*, U.S. Immigration Policy Center, May 16, 2023, https://usipc.ucsd.edu/publications/usipc-lives-in-danger.pdf?emci=4479c51d-9df3-ed11-907c-00224832eb73&emdi=29562f91-e9f3-ed11-907c-00224832eb73&ceid=8213949.

[13] *Id.*

[14] *See* Solis, *supra* note 5; Justo Robles, Alejandra Reyes-Velarde and Wendy Fry, *Border Patrol dropped 42,000 migrants on San Diego streets. Now county, groups are seeking help,* California Divide, Dec. 4, 2023, https://calmatters.org/california-divide/2023/12/immigration-california-street-releases/.

[15] *See* Jesse Franzblau, *Analysis White House October 2023 Supplemental Funding Request, National Immigrant Justice Center*, Oct. 24, 2023, https://immigrantjustice.org/sites/default/files/content-type/commentary-item/documents/2023-10/NIJC%20AnaAnalysis-White-House-October-2023-Supplemental-Funding-Request.pdf; *see also* Robert Moore, *Biden seeks $14*

now debating whether to pass a supplemental funding bill that would fund an additional 1,600 Border Patrol employees and give raises to existing employees.[16] Media coverage has intimately linked CBP activities in the camps to the ongoing debate over the supplemental funding bill.[17]

Finally, the media has shown considerable interest in the camps given former President Trump's plans to use "giant camps" as part of his immigration policy in the event of his reelection.[18] As such, the public has raised significant concerns regarding the integrity of CBP operations. Prompt disclosure of the records sought in this request is vital to the public debate over CBP's treatment of asylum seekers, CBP funding levels, and future U.S. border policy.

## III.    REQUEST FOR FEE WAIVER

AOL requests that the agency waive all fees associated with this request as the records requested are "likely to contribute significantly to public understanding of the operations or activities of the government and [are] not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). As discussed in section II, the requested records will contribute significantly to the public's understanding of CBP activities at the "gathering sites."

AOL and CGRS do not seek these records for commercial reasons. AOL is a 501(c)(3) non-profit organization established to advocate for indigent refugees, migrants, and deportees in the U.S. and Mexico. AOL regularly provides information and analysis free of charge to the media, the general public, and international human rights monitoring bodies. Additionally, AOL staff regularly lectures at professional and academic conferences, and universities. AOL actively disseminates information about conditions on the U.S.-Mexico border through its various social media accounts, which have thousands of followers including many immigration reporters. AOL will analyze and share the information obtained through this FOIA request via its social media accounts and other publicly accessible fora at no cost to the public.

CGRS housed at the University of California Hastings College of the Law in San

---

*billion in additional border, immigration funding*, El Paso Matters, Oct. 20, 2023, https://elpasomatters.org/2023/10/20/biden-administration-supplemental-border-funding-request/.

[16] *See* Ariana Figueroa, *Congress is haggling over border security: Where does it stand?*, Missouri Independent, Dec. 4, 2023, https://missouriindependent.com/2023/12/04/congress-is-haggling-over-border-security-where-does-it-stand/; *see also* Alexander Bolton, *Vulnerable Senate Democrats caught in crossfire over border security* The Hill, Nov. 3, 2023, https://thehill.com/homenews/senate/4291081-vulnerable-senate-democrats-border-security/.

[17] *See* Mireya Villarreal, *et. al*, *Migrant encampments surging at border in Jacumba Hot Springs: Reporter's Notebook*, ABC News, Dec. 7, 2023, https://abcnews.go.com/US/migrant-encampments-surging-border-jacumba-hot-springs-reporters/story?id=10542483 9; Sarah Smith, *A crisis at the Mexico border felt in Ukraine*, BBC, Dec. 8, 2023, https://www.bbc.com/news/world-us-canada-67663844.

[18] *See* Charlie Savage, Maggie Haberman and Jonathan Swan, *Sweeping Raids, Giant Camps and Mass Deportations: Inside Trump's 2025 Immigration Plans*, The New York Times, Nov. 11, 2023, https://www.nytimes.com/2023/11/11/us/politics/trump-2025-immigration-agenda.html; Anita Snow, *Smugglers are bringing migrants to a remote Arizona border crossing, overwhelming US agents*, The Associated Press, Dec. 10, 2023, https://apnews.com/article/lukeville-arizona-border-crossing-closed-ae04e8c861a95e98dbfc8d49244cf092; Paula Ramon, *'A new normal': Migrants huddle in open-air camps on US border*, NBC News, Dec. 9, 2023, https://www.nbcrightnow.com/national/a-new-normal-migrants-huddle-in-open-air-camps-on-us-border/article_d81a4354-7ef8-54c3-b259-f194d14ffcef.html.

Francisco, California, is dedicated to protecting the fundamental human rights of refugee women, children, LGBT individuals, and others who flee persecution in their home countries through the provision of expert technical assistance, training, impact litigation, policy development, research, and in-country fact-finding. Through its technical assistance program, CGRS each year advises hundreds of attorneys about asylum law and procedure and provides case materials such as country conditions evidence, expert declarations, sample briefs, and unpublished immigration decisions that CGRS collects, analyzes, and shares. In addition to providing technical assistance and mentorship that is tailored to individual cases at all levels, CGRS disseminates broadly applicable information on asylum topics through its website, http://cgrs.uchastings.edu, and social media, as well as other sources such as reports and practice advisories and through webinars and in-person trainings.

We appreciate your prompt attention to this request. In accordance with DHS regulations, we expect to receive a decision on our request for expedited processing within ten calendar days and a written determination as to our FOIA request within twenty business days. If you have any questions, do not hesitate to contact the undersigned counsel who represents AOL and CGRS for the purpose of this request.

Sincerely,

Jeremy Jong[19]
Staff Attorney
Al Otro Lado
(504) 475-6728
jeremy@alotrolado.org

---

[19] Pursuant to 5 U.S.C. § 552(a)(6)(E)(6), I certify that the expedited processing information in section II, *supra*, is true and correct to the best of my knowledge and belief.